# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

CARL R. MISENHIMER,     )
     )
     Plaintiff,     )
     )     **Civil Action No. 1:11-cv-00012**
     v.     )     **Judge Wiseman / Knowles**
     )
MICHAEL J. ASTRUE,     )
**Commissioner of Social Security**     )
     )
     Defendant.     )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's "Motion for Judgment Based Upon the Administrative Record or in the Alternative, Motion for Remand." Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment Based Upon the Administrative Record or in the Alternative, Motion for Remand" be DENIED, and that the decision of the Commissioner be AFFIRMED.

# I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on September 11, 2003, alleging that he had been disabled since December 31, 2002, due to back, neck, and knee pain, depression, and panic attacks.  Docket No. 10, Attachment ("TR") 17, 62-63, 85-88, 118-119, 127-128, 393-394, 398-400.  Plaintiff's application for DIB was denied both initially (TR 62-63) and upon reconsideration (TR 64-65).  His application for SSI was also denied both initially (TR 393-394) and upon reconsideration (TR 395-396).  Plaintiff subsequently requested (TR 75-76) and received (TR 77-84) a hearing.  Plaintiff's first hearing was conducted on October 12, 2006, by Administrative Law Judge ("ALJ") Linda G. Roberts.  TR 410, 415, 626-671.  Plaintiff and a vocational expert, Dr. Gordon Doss, appeared and testified.  TR 410, 626.  On January 24, 2007, ALJ Roberts issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 407-415.  Plaintiff sought review from the Appeals Council (TR 416), which remanded the case for a second hearing.  TR 417-421.  In its letter of remand, the Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's physical and mental impairments, further evaluate Plaintiff's mental impairments, further consider Plaintiff's residual functional capacity, and obtain supplemental evidence from a vocational expert.  TR 420.

On April 3, 2008, ALJ Roberts held Plaintiff's second hearing.  TR 17, 672-733. Plaintiff and vocational expert Rebecca Williams ("VE") appeared and testified.  *Id.*  On October 29, 2008, ALJ Roberts issued a second decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 17-29. Specifically, ALJ Roberts made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2005.

2. The claimant has not engaged in substantial gainful activity since December 31, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant's "severe" impairments have been myofascial pain syndromes of the lumbar and cervical spines, knee arthralgias, a moderate major depressive disorder, and a moderate panic disorder with agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant has not had an impairment or combination of impairments that has met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Since his alleged disability onset date, the claimant could perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except for the limitations on pages 6 and 7 in Exhibit 22F.

6. The claimant could not perform any past relevant work (20 CFR 404.1565 and 416.965).

7. As she [*sic*] was born on September 7, 1951, the claimant was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education with the ability to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering his age, education, work experience, and
        residual functional capacity, jobs that the claimant could
        perform have existed in significant numbers in the national
        economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and
        416.966).

11.     The claimant has not been under a disability, as defined in
        the Social Security Act, from December 31, 2002 through
        the date of this decision (20 CFR 404.1520(g) and
        416.920(g)).

TR 24-29.

        On December 23, 2008, Plaintiff timely filed a request for review of the second hearing

decision.  TR 619-625.  On December 17, 2010, the Appeals Council issued a letter declining to

review the case (TR 9-11), thereby rendering the decision of the ALJ the final decision of the

Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction.  42

U.S.C. §§ 405(g) and 1383(c)(3).  If the Commissioner's findings are supported by substantial

evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

        The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

        This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The

purpose of this review is to determine (1) whether substantial evidence exists in the record to

support the Commissioner's decision, and (2) whether any legal errors were committed in the

4

process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) improperly weighing the medical opinions of record and failing to give a reasonable explanation for doing so; 2) improperly weighing the consultative examiners' opinions of record; 3) using the "pick and choose" method to evaluate the medical evidence and the credibility of Plaintiff; and 4) relying on the vocational expert's testimony at Plaintiff's hearing, instead of relying on her responses to interrogatories, and also by allowing the vocational expert to use Plaintiff's office manager job as past relevant work without establishing that it was gainful employment.  Docket No. 13.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1.  Weight Accorded to the Opinions of Treating Physicians

Plaintiff argues that the ALJ does not explain the weight given to the opinions of the treating physicians of record. Docket No. 13. Specifically, Plaintiff maintains that he was seen by three main treating physicians: primary care physician, Dr. Leon Campbell, from September 14, 1999 until August 6, 2003; Dr. Acharya (and Nurse Practitioner, Mr. Berry), at North Terrace Medical Clinic from December 8, 2003 through October 5, 2004; and Dr. Mallipeddi at Centerstone Mental Health Facility, where Plaintiff was diagnosed with panic disorder with agoraphobia and was given a Global Assessment of Functioning ("GAF") of 50. *Id.* Plaintiff contends that the opinions of these treating physicians should have been accorded the greatest weight in the ALJ's evaluation because "the Court has repeatedly held that the opinions of a treating physician are entitled to great weight and generally are entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only a single occasion." *Id.*

Defendant responds that Plaintiff relies on Sixth Circuit law that is outdated because it pre-dates the 1991 Social Security Administration regulations entitled, "Evaluating medical opinions about your impairment(s) or disability." Docket No. 14, *citing* 20 CFR § 404.1527 (1991). Defendant maintains that this regulation supersedes the Sixth Circuit law on which Plaintiff relies, and, therefore, that the ALJ properly accorded the opinions of Plaintiff's treating physicians little weight because they did not meet the requirements of the regulation. *Id.* Defendant further contends that substantial evidence supports the ALJ's assignment of little weight to the opinions of Dr. Campbell, Dr. Acharya and Nurse Practitioner Berry, and Dr. Mallipeddi. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis

for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

It is undisputed that Dr. Campbell was Plaintiff's primary care physician and had treated Plaintiff for several years. As a treating physician, the Regulations permit the ALJ to accord controlling weight to Dr. Campbell's opinion, as long as that opinion is consistent with, and supported by, the evidence of record. *See* 20 C.F.R. § 416.927(d).

The record, however, does not contain any disability related assessments completed by Dr. Campbell regarding Plaintiff. As far as the record shows, Dr. Campbell did not complete a medical source statement concerning Plaintiff's physical ability to do work-related activities, or complete any other form rendering an opinion regarding Plaintiff's abilities or lack thereof. The ALJ in the case at bar, however, was aware that Dr. Campbell was Plaintiff's primary care physician, and that he had been so for several years. In fact, the ALJ summarized the medical records from Dr. Campbell as follows:

> In February 2003, the claimant saw Leon Campbell, M.D., who had been a primary care physician for several years. The claimant told Dr. Campbell that he was "working [full-time] as a barber/stylist" and that he could do so with his medications. Dr. Campbell diagnosed degenerative disc disease (DDD) and lumbago. Exhibit 23F, pp. 15-15.

> In March 2003, the claimant told Dr. Campbell that his pain medications reduced his pain to a two to four on an increasing scale from one to ten. He also said that he continued working full-time. Exhibit 23F, pp. 12-13.

In April 2003, the claimant told Dr. Campbell that his pain medications reduced his pain to a four on an increasing scale from one to ten. He also said that he continued working full-time and also traveled to get supplies and to teach and sell products to other stylists. Exhibit 23F, pp. 10-11.

In May 2003, the claimant told Dr. Campbell that he continued to work full-time and that he also went fishing and arrowhead hunting. He also said that his pain had increased to a six or seven on an increasing scale from one to ten. A month later, the claimant reported much better pain relief. Exhibit 23F, pp. 6-9.

In July 2003, the claimant reported to Dr. Campbell about worsening pain after he ran out of his medications; he added, however, that those medications reduced his pain to a two or three on an increasing scale from one to ten. The claimant also reported having sexual dysfunction. A month later, he reported that he continued to work full time and that he no longer had sexual dysfunction. Exhibit 23F, pp. 2-5.

No evidence was submitted that the claimant ever returned to see Dr. Campbell.

TR 19-20.

In her decision, the ALJ also mentioned Dr. Campbell as follows:

. . . the claimant told Dr. Campbell that he was working full-time during much of 2003, but there is insufficient evidence that he engaged in substantial gainful activity during that time.
. . .
In 2003, the claimant told Dr. Campbell several times that he was working full-time and once also told him about going fishing and hunting for arrowheads. . . .

TR 24, 26.

It is unclear why Plaintiff argues that the ALJ erred in not specifying the weight she accorded Dr. Campbell's opinion, and erred in not according Dr. Campbell's opinion great weight, because Dr. Campbell did not provide *any* statements asserting that Plaintiff had functional limitations, much less did he render an opinion regarding Plaintiff's abilities or lack

12

thereof. *See* TR 502-618. Because Dr. Campbell did not render an opinion regarding Plaintiff's abilities or lack thereof, there was no opinion for the ALJ to discuss or to accord any weight. Moreover, as can be seen from the quoted passages above, the ALJ explicitly noted that Dr. Campbell was a treating physician who had seen Plaintiff "for several years" and the ALJ discussed Dr. Campbell's records. The ALJ considered the medical records from Dr. Campbell in making her determination, and Plaintiff's argument on this point fails.

Dr. Acharya treated Plaintiff from December 2003 through March 2004 at North Terrace Medical Clinic. TR 20; 285-93. On November 13, 2006, Dr. Acharya completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form regarding Plaintiff. TR 23, 460-63. In that form, Dr. Acharya opined that Plaintiff would be able to do the following: lift and/or carry 10 pounds occasionally;[2] stand and/or walk for "at least" 2 hours in an 8-hour workday; sit for less than 6 hours in an 8-hour workday; perform limited pushing and/or pulling with his upper and lower extremities; occasionally climb, balance, and stoop; occasionally reach, handle, finger, and feel; never crawl, kneel, or crouch; and avoid exposure to temperature extremes, irritating inhalants, and hazards such as unprotected heights and moving machinery. TR 460-63. Dr. Acharya also noted that Plaintiff had limited vision. TR 462.

As support for each of Dr. Acharya's opined functional limitations, he states, "By history from client." TR 460-63. He goes on to state:

> [Plaintiff] has not been seen in this office in a year. We have no knowledge of current [treatment] by pain [management]. We do not have tests to confirm history of disability, and client does need MRI's, etc., but has no insurance to afford tests.

---

[2] Dr. Acharya did not indicate what weight Plaintiff would be able to lift/carry on a frequent basis. *See* TR 461.

TR 463.

By his own acknowledgment, Dr. Archarya's opinion was based upon Plaintiff's reported history, and not on objective test results. In the case at bar, the ALJ accorded Dr. Acharya's opinion little weight because "he merely repeated the claimant's own opinion and because he had not seen the claimant for at least a year." TR 27. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

Moreover, as has been discussed, *supra,* in order to qualify for disability benefits, a claimant must have a disability that has lasted for twelve consecutive months or is expected to last for twelve consecutive months or result in death. Because Dr. Acharya had not seen Plaintiff in "at least a year" at the time he completed his Medical Source Statement regarding Plaintiff, the ALJ was correct to discount his opinions expressed therein.

With regard to Plaintiff's arguments concerning the ALJ's consideration of Mr. Berry's opinion, Mr. Berry is a Nurse Practitioner. *See* TR 307. The Regulations provide that the ALJ may properly:

> use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -
>
> (1) Medical Sources not listed in paragraph (a) of this section (for example, *nurse-practitioners,* physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 C.F.R. § 404.1513(d) (emphasis added).

The ALJ discussed Mr. Berry's opinion that Plaintiff had a "physical or mental" impairment and a "severe, chronic disability" that would last "an indefinite period in accordance

with the definitions of the United States Department of Housing and Urban Development [*sic*]." TR 21-22.  While the ALJ acknowledged Mr. Berry's opinion as those of an "other source," she accorded them little weight because, "[Mr. Berry] was using a disability standard other than that of SSA and because he could not identify a specific impairment upon which to base his opinion." TR 27.  The weight accorded to Mr. Berry's opinion was proper.

With regard to Plaintiff's arguments concerning the weight accorded to the opinion of Dr. Mallipeddi, the ALJ properly accorded the opinion of Dr. Mallipeddi little weight.  As the ALJ summarized:

> In January 2003, the claimant was hospitalized for treatment of a depressed mood, suicidal ideations, and withdrawal symptoms from opiates.  After two days of treatment, he was diagnosed with opiate dependence, a substance-induced mood disorder, and amphetamine and benzodiazepine abuse; a major depressive disorder and a post traumatic stress disordered needed to be ruled out.  He was assigned a Global Assessment of Functioning (GAF) score of 50, which indicated serious, but almost moderate, symptoms.  Exhibit 2F.

> A few weeks later, the claimant went to Centerstone Community Mental Health Centers (Centerstone) for treatment of panic attacks. Two months later, the claimant told Madhavi Mallipeddi, M.D., a Centerstone psychiatrist, that he had panic attacks that were treated successfully with alprazolam for several years and then was switched to other medications that were not helpful.  He also denied having had a psychiatric hospitalization.  Dr. Mallipeddi found that the claimant had an anxious mood and affect, appropriate behavior, organized speech, a normal thought process with thought content that was within normal limits, average intelligence, and fair judgment, insight, and motivation for treatment.  He noted that the claimant did not have any suicidal ideations.  Dr. Mallipeddi diagnosed a panic disorder with agoraphobia and assigned a GAF score of 50.  The claimant did not return to Centerstone for six months.  Exhibit 5F, pp. 8-16.

> . . .

> In September 2003, the claimant returned to see Dr. Mallipeddi for

the first time in several months. He found that the claimant's activities of daily living were "adequate" but that he was "asocial." Exhibit 5F, pp. 8-9.

In early October 2003, the claimant went to the ER for treatment of a panic attack, but he left against medical advice (AMA) shortly after he was examined. Exhibit 3F, pp. 3-8.

A few days later, Dr. Mallipeddi again found that the claimant's activities of daily living were "adequate" but that his social interaction was "poor." No mention was made of the claimant's ER visit. Exhibit 5F, pp. 6-7.

No evidence was submitted that the claimant ever returned to see Dr. Mallipeddi.

TR 19-20.

The ALJ found that Dr. Mallipeddi's opinion that Plaintiff had some difficulties with social interaction was consistent with the other medical evidence. TR 25. The ALJ accorded little weight to Dr. Mallipeddi's assigned GAF score of 50, however, because:

The GAF scores from Centerstone and from the claimant's psychiatric hospitalization, along with the Clinically Related Group (CRG) assessment from Centerstone, were all made in January 2003. According to the rest of the medical evidence, however, those scores and that assessment were no longer valid within a matter of months, if not, weeks. Thus, those GAF scores and the CRG assessment also receive little weight.

TR 27.[3]

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's opinion when that evaluation is inconsistent with other substantial evidence in the

---

[3] The ALJ also considered the opinion of SSA psychologist, Dr. Doineau. TR 22, 25-27. Dr. Doineau examined Plaintiff and assigned him a GAF score of 61, indicating mild symptoms of mental limitations. TR 22; 357. The ALJ noted that Dr. Doineau had opined, *inter alia*, that Plaintiff had a "mild to moderate limitation in his ability to interact socially and to have no more than mild limitations otherwise." *Id.*

record.  *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2).  Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above.  *Id.*  The ALJ in the case at bar accepted the portions of Dr. Mallipeddi's opinion that were consistent with the evidence of record, and discounted the portions that were not.  The Regulations do not require more.

As can be seen, contrary to Plaintiff's assertion, the ALJ explained the weight accorded to the opinions of the treating physicians of record.  Moreover, as has been discussed, despite Plaintiff's argument that the opinions of these treating physicians should have been given the greatest weight simply because the Court has repeatedly held that the opinions of a treating physician are entitled to great weight, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). The ALJ in the case at bar considered the evidence of record, properly evaluated that evidence, and rendered a reasoned decision.  Plaintiff's argument fails.

## 2.  Weight Accorded to the Opinions of Consultative Examiners

Plaintiff next argues that the ALJ improperly weighed the opinions of three consultative examiners of record: Dr. Wilburn, Dr. Rinehart, and Mr. Stair.  Docket No 13.  Plaintiff argues that Dr. Wilburn's opinion should have been accorded more weight than that of Dr. Rinehart because Dr. Wilburn is a specialist, while Dr. Rinehart is not.  Plaintiff further asserts that the ALJ does not explain why she accorded greater weight to the opinion of Dr. Rinehart over Dr. Wilburn.  *Id.*  Plaintiff argues that the ALJ was required to give "good reasons" for doing so.  *Id.* Lastly, Plaintiff contends that, while the ALJ placed great weight on Mr. Stair's opinion, he does

not reasonably explain his decision to accord little weight to the GAF score of 50 assigned to Plaintiff by Mr. Stair.  *Id.*

Defendant responds that substantial evidence supports the ALJ's accordation of weight to the opinions of Dr. Wilburn, Dr. Rinehart, and Mr. Stair.  Docket No. 14.  Defendant maintains that the ALJ's decision to grant Dr. Rinehart's opinion more weight than Dr. Wilburn's is supported by the specificity of Dr. Rinehart's report.  *Id.*  Defendant also asserts that the ALJ properly accorded great weight to Mr. Stair's opinion concerning moderate limitations and symptoms and accorded the GAF score of 50 little weight because it was inconsistent with the rest of his opinion.  *Id.*

The ALJ summarized Dr. Wilburn's examination findings as follows:

> In June 2004, at the request of the Social Security Administration (SSA), C. Douglas Wilburn, M.D., an orthopedic surgeon, examined the claimant, who reported about a motor vehicle accident in 1979 that resulted in broken legs and required surgery on the left leg.  He said that he had had worsening back, neck, and knee pain with the back pain radiating into his hips.  Dr. Wilburn noted that the claimant was in no acute distress; he found that the claimant's [*sic*] had normal ranges of motion in his neck, shoulders, elbows, ankles, hips, and knees and ear normal ranges of motion in his back.  Dr. Wilburn also found the claimant had minimal crepitus in his knees and straight leg raises that produced knee pain but not radicular pain.  He noted the claimant had normal strength and sensation in all extremities.  Dr. Wilburn ordered X-rays of the lumbar spine, which revealed a transitional vertabra at S1 but was otherwise normal, and of the left knee, which was negative. Dr. Wilburn diagnosed chronic mechanical low back and cervical myofascial pain and bilateral knee arthralgias. He opined that the claimant's "subjective complaints [we]re much greater than his objective findings" and that he "really ha[d] very few objective physical abnormalities.  Dr. Wilburn also opined that the claimant should not perform any heavy lifting or repetitive lifting, bending, or twisting.  He added that the claimant might benefit from periodically alternating sitting and standing. Dr. Wilburn maintained, however, that he believed that the claimant could perform "some modified work."  Exhibit 10F.

TR 21, 294-97.

Dr. Wilburn also observed that, "At the same time, as mentioned above, the patient's complaints appear to be predominantly subjective with very low objective findings to go along with those either clinically or radiographically."  TR 296.

The ALJ summarized Dr. Rinehart's examination findings as follows:

> In November 2007, at the SSA's request, Darrel Rinehart, M.D., examined the claimant, who complained of back, neck, and knee pain since his January 2003 accident; still, he denied having any broken bones from it.  The claimant said that he "could not lift much at all," could stand for twenty minutes, could walk for one to one and a half blocks, and could sit for fifteen minutes at a time.  Dr. Rinehart found that the claimant had slight unsteadiness in gait and station maneuvers and slightly reduced ranges of motion in the cervical spine; he also found the claimant could not completely squat and rise.  The rest of his examination, however, was unremarkable.  Dr. Rinehart diagnosed chronic back, neck, and knee pain.  He opined that, during an eight-hour workday, the claimant could lift and/or carry 100 pounds occasionally and 20 pounds frequently, could stand for 6 hours and for 3 hours at a time, could walk for 6 hours and for 3 hours at a time, could sit for 6 hours and for 3 hours at a time, could perform continuous manipulative activities, could perform continuous postural activities, could continuously use foot controls, and could tolerate loud nose and continuous exposure to unusual environmental conditions.  Exhibit 21F.

TR 23, 484-86.

Dr. Rinehart further noted that, "At this particular time, [Plaintiff] had fairly good mobility..."  TR 486.  Dr. Rinehart opined, "Based on exam and observation, at this time I feel that he has no impairment related physical limitations."  *Id.*

In the case at bar, the ALJ accorded Dr. Rinehart's opinion "more weight" and Dr. Wilburn's opinion "little weight."  TR 27.  Contrary to Plaintiff's assertion that the ALJ did not give "good reasons" for the weight she accorded to each opinion, the ALJ clearly articulated that

she accorded Dr. Wilburn's opinion "little weight" because it was much less specific than Dr. Rinehart's. As the ALJ also noted, Dr. Wilburn opined that, (1) Plaintiff's subjective complaints "[we]re much greater than his objective findings"; (2) Plaintiff "really ha[d] very few objective physical abnormalities in his plane x-rays"; and (3) Plaintiff was "capable of doing some modified work." TR 21; 296.

While Plaintiff is correct that Dr. Wilburn is a specialist, and that the opinion of specialists are generally accorded greater weight than opinions of non-specialists, the regulations also provide that, "the better an explanation a source provides for an opinion, the more weight we will give that opinion." *See* 20 C.F.R. § 416.927(d). *See also* 20 C.F.R. § 404.1527(d). Dr. Rinehart submitted the assessment form on which he based his medical opinion, while Dr. Wilburn did not. *See* TR 294-97; 484-92. Additionally, Dr. Rinehart included more physical examination areas in his opinion than did Dr. Wilburn, and tested for more symptoms, such as signs for clubbing, cyanosis, and edema. *Id.* Because Dr. Rinehart's opinion was more specific than Dr. Wilburn's, the ALJ properly decided to accord the opinion of Dr. Rinehart more weight.

With respect to Mr. Stair, the ALJ summarized his evaluation findings as follows:

> ...[A]t SSA's request, Arthur Stair, M.A., a psychological examiner, interviewed the claimant, who reported about a history of depression that began as a teenager, improved in his twenties, and worsened in his forties. He said that he had become afraid to interact with people. The claimant also described the accident in 1979 and having anxiety when he drove and at other times as well. He said that he had feelings of hopelessness, irritability, fatigue, and difficulties with concentration, and sleep. The claimant said that he liked to write stories and poems but that he slept 16-18 hours a day. Mr. Stair found that the claimant had average abstraction, problem-solving, and executive decisionmaking [*sic*] abilities along with an intact memory, a logical and coherent train of thought, a fair to good

attention span, adequate articulation, a dysporic affect, and good eye contact. Mr. Stair diagnosed a moderate panic disorder with agoraphobia and a moderate, recurrent major depressive disorder with occasional full inter-episode recovery and assigned him a Global Assessment of Functioning (GAF) score of 50. He opined that the claimant had satisfactory abilities to interact appropriately with the public, to interact appropriately with supervisors, to interact appropriately with co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. Mr. Stair also opined that the claimant had <u>no</u> limitations in his abilities to understand and remember short and simple instructions, to carry out short and simple instructions, to make judgments on simple work-related decisions, to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. Exhibit 22F.

TR 23-24, 493-97 (underlining in original).

As explained by the ALJ, she accorded the opinion of Mr. Stair great weight:

Mr. Stair examined the claimant and provided specific mental limitations. While he is not a psychologist, his report was endorsed by Dr. Stanley. Hence, Mr. Stair's opinion receives the most weight, although his GAF score receives little weight because it is inconsistent with the rest of his opinion.

TR 27.

Plaintiff argues that the ALJ does not reasonably explain her decision to not accord great weight to Mr. Stair's assignment of a GAF score of 50. As can be seen however, the ALJ clearly stated that she discounted it because a GAF score of 50 was inconsistent with the rest of Mr. Stair's opinion. A GAF score of 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. Significantly, however, as demonstrated above, Mr. Stair reported that Plaintiff had a *moderate* panic disorder and a *moderate* depressive disorder. TR 24. Mr. Stair further reported that Plaintiff had *satisfactory* abilities to interact appropriately with the public, to interact appropriately with supervisors, to interact appropriately with co-

21

workers, and to respond appropriately to usual work situations and to changes in a routine work setting. Mr. Stair also reported that Plaintiff had *no limitations* in his abilities to understand and remember short and simple instructions, to carry out short and simple instructions, to make judgments on simple work-related decisions, to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. *Id.* Plaintiff's argument that the ALJ does not reasonably explain her decision to accord the GAF score assigned by Mr. Stair fails.

### 3.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred by using the "pick and choose" method to evaluate Plaintiff's credibility.  Docket No. 13.  Plaintiff argues that the ALJ should have fully credited his complaints of pain, and contends that the ALJ did not consider the record as a whole when rejecting his credibility.  Specifically, Plaintiff contends that the fact that he attempted to return to work in 2003 and tried to continue cutting hair on and off during this time "should not be held against him as a credibility issue."  *Id.*

Defendant responds that even a facial reading of the ALJ's decision shows that the ALJ did not make a conclusory determination regarding Plaintiff's credibility.  Docket No. 14. Defendant further maintains that substantial evidence supports the ALJ's finding that Plaintiff's testimony is not credible.  *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain

arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing a claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not credible to the extent Plaintiff alleged. Finding Plaintiff's testimony inconsistent with his own statements to physicians, the ALJ explained:

> In 2003, the claimant told Dr. Campbell several times that he was working full-time and once also told him about going fishing and hunting for arrowheads. He also told Dr. Doineau he had continued to cut people's hair "on and off" since 2002. Dr. Doineau described the claimant as "evasive at times"; she also noted he initially denied having any addictions but later admitted he had been addicted to opiates. The claimant told Dr. Doineau that he gave up taking alprazolam "to be strong," yet he also told her he became upset with Dr. Mallipeddi because he would not prescribe the medications he wanted such as alprazolam. The claimant has stated he could not afford his medications, yet he has been able to afford cigarettes. The claimant testified that he spent most of the day in bed or on the couch, and he told Mr. Stair he slept 16-18 hours a day. There is very little evidence that he told anyone else or tried to remedy the problem. Given such contradictions, inconsistencies, and other circumstances, the claimant's testimony cannot be found credible to the extent alleged.

TR 26.

The ALJ continued:

> In terms of the claimant's mental impairments, the claimant has sought very little treatment for this condition and could be quite willing to question the judgment of his psychiatrist. Further, he told Dr. Doineau he could still perform all his activities of daily living. Hence, the limitations given above are considered appropriate.

*Id.*

As can be seen, contrary to Plaintiff's assertion that the ALJ uses the "pick and choose" method of evaluation, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims. Discounting

24

credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province; therefore, Plaintiff's argument fails.

**4.  Testimony of the Vocational Expert**

Plaintiff argues that the ALJ erred by not giving the VE's written responses to interrogatories weight in making her decision. Docket No. 13. Specifically, Plaintiff takes issue with the fact that the ALJ, when reaching her decision, considered the answers that the VE rendered at the hearing, rather than her responses to the written interrogatories that were later presented to her. *Id.*

Defendant responds that Plaintiff does not cite to anything in the Act, Regulations, or case law that supports Plaintiff's position that the ALJ must accord greater weight to written interrogatories presented to a VE than to a VE's hearing testimony. Docket No. 14. Defendant also maintains that Plaintiff's assertion is a mischaracterization of what the ALJ did, because the ALJ considered the interrogatories sent to the VE and determined that she would rely on the VE's testimony because it was consistent with her written responses. *Id.*

In the case at bar, the ALJ found:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists

in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

TR 28.

Plaintiff argues that the ALJ erred by not giving the VE's written responses to interrogatories weight in making her decision. Defendant, however, correctly points out that there is no such law mandating the ALJ do so. Moreover, the ALJ clearly stated that the VE's written responses to the interrogatories were "consistent" with her testimony:

> At the request of a SSA attorney-advisor, interrogatories were sent to Ms. Williams, and her responses were essentially consistent with her testimony. Unfortunately, those interrogatories were actually duplicative of what I asked Ms. Williams at the hearing. Mr. Freemon, however, took it upon himself to sent [*sic*] Ms. Williams his own interrogatories without my knowledge. Ms. Williams declined to answer the most important questions because she considered them beyond the scope of her expertise. Having reviewed them, I agree with her...

TR 28-29.

As the ALJ explained, the VE's written responses to the interrogatories were "consistent with her testimony" and "duplicative of what [she] asked Ms. Williams at the hearing." *Id.* The ALJ's explanation demonstrates that she was not only aware of the two sets of interrogatories, but that she reviewed the VE's answers to them. The ALJ articulated her reasoning for relying on the VE's hearing testimony, and Plaintiff has not adduced any authority establishing that that reliance was somehow erroneous. Plaintiff's argument fails.

Plaintiff lastly contends that the ALJ erred in allowing the VE to use the office manager job as past relevant work without establishing that it was gainful employment. Docket No. 13. Plaintiff maintains that this clerical work was not sufficient to be deemed past relevant work. *Id.*

Defendant responds that Plaintiff's argument is moot because the ALJ clearly stated that Plaintiff could not perform past relevant work. Docket No. 14. Specifically, the ALJ only considered Plaintiff's past relevant work as a cosmetologist in making her decision. *Id.*

As an initial matter, regardless of what past Plaintiff positions the ALJ considered, the ALJ determined that Plaintiff could *not* perform *any* past relevant work. TR 27. Accordingly, even if Plaintiff was correct in his assertion, it would not constitute grounds for either reversal or remand, as any such error would have been harmless.

Moreover, Defendant is correct that the ALJ considered only Plaintiff's work as a cosmetologist as past relevant work. Specifically, the ALJ stated:

> According to the vocational expert, the claimant's *past relevant work as a cosmetologist*, being skilled, required a light level of exertion. Ms. Williams also testified such work could not be performed with the above residual functional capacity.

TR 27 (emphasis added). There is no indication in the ALJ's decision that she considered Plaintiff's past work as an office manager as past relevant work. Plaintiff's argument fails.

Because there is nothing in the ALJ's decision establishing that she considered the office manager job as past relevant work, Plaintiff's argument that the ALJ needed to first establish that it was gainful employment is moot.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment Based Upon the Administrative Record or, In the Alternative, Motion for Remand be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge